IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBIN DALE REICH,               )
                                )
         Plaintiff,             )
                                )
    vs.                         )  Civil Action No. 1:15-9
                                )
CAROLYN W. COLVIN, ACTING       )
COMMISSIONER OF SOCIAL SECURITY,)
                                )
         Defendant.             )

AMBROSE, Senior District Judge

## OPINION
## and
## ORDER OF COURT

### SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. (Docket Nos. 10 and 16). Both parties have filed Briefs in Support of their Motions. (Docket Nos. 11 and 17). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting Defendant's Motion for Summary Judgment (Docket No. 16) and denying Plaintiff's Motion for Summary Judgment (Docket No. 10).

### I. BACKGROUND

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). On or about January 23, 2012, Plaintiff applied for DIB. (R. 152-53). In his application, he alleged that since September 24, 2008, he had been disabled due to titanium rods in his lower right leg from an auto accident; small nerve damage in both legs; numbness and burning in his legs; his feet falling asleep and feeling like pins and

1

needles; and feeling like someone is dumping acid on his legs. (R. 80-81, 168). His date last insured is June 30, 2010. (R. 36, 83). The state agency denied his claims initially, and he requested an administrative hearing. (R. 105-110). Administrative Law Judge ("ALJ") David F. Brash held a video hearing on January 30, 2013, at which Plaintiff was represented by counsel. (R. 50-78). Plaintiff appeared at the hearing and testified via video on his own behalf. Id. A vocational expert also was present at the hearing and testified. (R. 69-75). In a decision dated March 22, 2013, the ALJ found that Plaintiff could perform past relevant work as an information technology (IT) specialist and, therefore, that Plaintiff was not disabled under the Act. (R. 34-44). Alternatively, the ALJ found that there were other jobs that existed in significant numbers in the national economy that Plaintiff also could have performed. (R. 44-45). Plaintiff requested review of the ALJ's determination by the Appeals Council, and, on November 13, 2014, the Appeals Council denied Plaintiff's request for review. (R. 1-6). Having exhausted all of his administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. (Docket Nos. 10 and 16). The issues are now ripe for my review.

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of

2

record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. § 404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

B. **WHETHER THE ALJ ERRED IN CONCLUDING THAT CLAIMANT DID NOT MEET A LISTING IN APPENDIX I, SUBPART P, REGULATION 4, SPECIFICALLY LISTINGS 1.02 AND 1.04**

The ALJ found that Plaintiff had severe impairments, including cervical degenerative disc disease; lumbar spondylosis/degenerative disc disease; bilateral femoral cutaneous neuropathy; right knee degenerative joint disease; status-post right tibial fracture with open reduction and internal fixation (ORIF); bilateral meralgia paresthetica; bilateral lower extremity peripheral neuropathy; and right lateral femoral cutaneous nerve entrapment. (R. 36). He then found that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 37-38). The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that he: could never climb a ladder, rope, or scaffold; could never push, pull, or operate foot controls with his lower extremities; could never kneel, crouch, or crawl; could only occasionally climb ramps or stairs; could only occasionally balance or stoop; required a sit-stand option, at the work station, with intervals no more frequent than every thirty minutes; and must have avoided concentrated exposure to vibration and temperature extremes, unprotected heights, dangerous machinery, and like workplace hazards. (R. 38). The ALJ ultimately concluded that considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform his past relevant work as an IT specialist and/or there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (R. 38-45).

4

Plaintiff takes issue with the ALJ's step three analysis. In step three of the analysis set forth above, the ALJ must determine if the claimant's impairment meets or is equal to one of the impairments listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1. Jesurum v. Secretary of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995). The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just "substantial gainful activity." Sullivan v. Zebley, 493 U.S. 521, 532 (1990); 20 C.F.R. § 404.1525(a). An applicant is conclusively presumed to be disabled if the impairment is equivalent to a listed impairment and, thus, no further analysis is necessary. Burnett v. Commissioner, 220 F.3d 112, 119 (3d Cir. 2000).

Plaintiff argues that the ALJ improperly assessed whether Plaintiff satisfied the requirements of Listing 1.02, 20 C.F.R. pt. 404, subpt. P, app.1 § 1.02. Listing 1.02 relates to major dysfunction of a joint due to any cause and provides as follows:

> **1.02** *Major dysfunction of a joint(s) (due to any cause)*: Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> OR
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. pt. 404, subpt. P, app. 1 § 1.02. The regulations define the "inability to ambulate effectively" as used in this listing as follows:

> b. What we mean by inability to ambulate effectively.

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00B2b. In this case, the ALJ found that Plaintiff did not meet Listing 1.02 because he did not establish that he was unable to "ambulate effectively" as defined above. (R. 37). Specifically, the ALJ noted that although the record documented reports of leg pain during the relevant period, it did not indicate that Plaintiff needed two canes or crutches to walk, or that he otherwise met Listing 1.02's requirements. Id. The ALJ further stated that, in contrast to Plaintiff's contention that he was only able to walk for five minutes at a time, Plaintiff reported that he would go shopping for three hours and was able to walk for five blocks before needing to rest. Id. (citing Ex. 3E).

Plaintiff argues that the ALJ improperly concluded that Plaintiff could ambulate effectively within the meaning of the listings. I disagree. As an initial matter, Plaintiff does not dispute that he did not require a cane or crutch to walk. Thus, Plaintiff admittedly does not meet the definition of effective ambulation in section 1.00B2b(1) which requires the use of a hand-held assistive device that limits the functioning of both upper extremities. The record evidence also supports

6

the ALJ's statement that Plaintiff reported he could walk five blocks or so before needing to stop and rest. See Ex. 3E [ECF No. 6-7], at 7. This is much longer than the one block cited as an example in the definition.

Plaintiff further argues that the ALJ improperly assessed whether Plaintiff satisfied the requirements of Listing 1.04, 20 C.F.R. pt. 404, subpt. P, app.1 § 1.04. Listing 1.04, which addresses Disorders of the Spine provides as follows:

> **1.04** *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> OR
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04. As with Listing 1.02, Plaintiff argues that the ALJ improperly concluded that Plaintiff could ambulate effectively and, therefore, did not meet Listing 1.04. [ECF No. 11, at 12-13]. This argument is unpersuasive. As an initial matter, as set forth above, substantial evidence supports the ALJ's conclusion that Plaintiff failed to demonstrate an inability to ambulate effectively. Moreover, the ALJ did not solely rely on Plaintiff's ability to

ambulate in analyzing this Listing. Other evidence the ALJ cited in support of his finding that Plaintiff did not meet Listing 1.04 includes medical records showing conservative treatment of Plaintiff's back condition and unremarkable results from a 2008 MRI of Plaintiff's lumbar spine showing no disc herniation or canal stenosis. (R. 37, citing Ex. 27). Plaintiff does not cite any contrary record evidence supporting his claim that he satisfies the stringent standards required to meet Listing 1.04.

For all of these reasons, Plaintiff's argument that the ALJ erroneously evaluated Listings 1.02 and 1.04 at Step Three of his analysis is without merit.

**C.  WHETHER THE ALJ ERRED BY FAILING TO ADDRESS WHETHER PLAINTIFF MET LISTING 11.14**

Although Plaintiff's attorney mentioned only Listings 1.02 and 1.04 at the administrative hearing, Plaintiff nevertheless argues that the ALJ erred in failing to address whether Plaintiff met the requirements of Listing 11.14, 20 C.F.R. pt. 404, subpt. P, app.1 § 11.14. In support, Plaintiff emphasizes that the state agency review physician, Dr. Sekas, noted that Plaintiff had bilateral idiopathic peripheral neuropathy, and considered Plaintiff's eligibility under Listing 11.14. Pl.'s Br. [ECF No. 11], at 13-16; see also ECF No. 6-4 (Ex. 1A). Plaintiff contends that the ALJ should have likewise discussed Listing 11.14 in his Opinion. Plaintiff's argument is unpersuasive.

Listing 11.00 deals with Neurological Impairments – Adult. 20 C.F.R. pt. 404, subpt. P, app.1 § 11.00. Listing 11.14 falls under the "Category of Impairments, Neurological," and provides as follows:

> **11.14** *Peripheral neuropathies*. With disorganization of motor function as described in 11.04B, in spite of prescribed treatment.

20 C.F.R. pt. 404, subpt. P, app.1 § 11.14. Listing 11.04B, to which Listing 11.14 cites, refers to:

> Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C).

20 C.F.R. pt. 404, subpt. P, app.1 § 11.04B. Listing 11.00C, in turn, provides:

> C. *Persistent disorganization of motor function* in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands and arms.

20 C.F.R. pt. 404, subpt. P, app.1 § 11.00C.

Plaintiff's argument that the ALJ erroneously failed to address Listing 11.14 is without merit. As an initial matter, although state agency physician Dr. Sekas mentioned Listing 11.14 in her report, she did not conclude that Plaintiff's impairments met that listing. (R. 82-86, Ex. 1A). Rather, Dr. Sekas ultimately opined that Plaintiff did not meet any of the Listings and that he retained the capacity to perform sedentary work with limitations. Id. Thus, Dr. Sekas's report is not evidence that Plaintiff meets Listing 11.14. Moreover, although the ALJ did not expressly address Listing 11.14 in his step three analysis, he stated that Plaintiff did not have an impairment that met or medically equaled <u>any</u> of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (R. 37). In addition, the ALJ discussed Dr. Sekas's findings in detail later in his opinion and gave them "great weight." (R. 42-43). The ALJ supported his analysis of Dr. Sekas's report with substantial evidence, including evidence that Dr. Sekas reviewed Plaintiff's entire medical record; that she referenced pain management records confirming a change in Plaintiff's pain complaints when distracted; and that the treating source records did not contradict her findings. (R. 42-43). Other substantial evidence further supports the ALJ's step three conclusions, including the above-cited evidence regarding Plaintiff's ambulation, his conservative course of treatment, and largely unremarkable test results and findings. (R. 37-42 and record evidence cited therein).

The law in this circuit is clear that the ALJ's failure to cite a specific listing at step three is not fatal as long as the ALJ's review of the record permits meaningful review of the step-three conclusion. Lopez v. Comm'r of Soc. Sec., 270 F. App'x 119, 121 (3d Cir. 2008) (citing Jones v. Barnhart, 364 F.3d 501, 503-05 (3d Cir. 2004)); see also id. at 122 ("[A]lthough a discussion of the specific applicable Listings certainly would have been helpful, our primary concern always has been our ability to conduct meaningful judicial review."). For the reasons set forth above and viewing the ALJ's opinion as a whole, I find that the ALJ analyzed the probative evidence and explained his findings sufficiently to permit meaningful judicial review of the step-three analysis. Accordingly, I find no error in this regard, and remand is not warranted on this issue.

### D.     WHETHER THE ALJ'S RFC FINDING FAILED TO PROPERLY EVALUATE PLAINTIFF'S ABILITY TO SIT

Plaintiff argues the ALJ's findings are deficient because he failed to make any findings regarding the number of hours that Plaintiff could sit in a regular work day. Pl.'s Br. [ECF No. 11] at 16-19. Specifically, Plaintiff argues that his limitation to sedentary work implies an ability to sit for six hours out of an eight-hour work day. Id. (citing S.S.R. 83-10 & 96-9). Plaintiff suggests, however, that the ALJ's inclusion of a sit-stand option in his RFC finding renders that finding confusing and contradictory because it is inconsistent with the ability to sit for six out of eight hours each workday. Id. This argument is without merit.

As Defendant correctly notes, the governing regulations define sedentary work as work that involves:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). The Social Security Administration has further explained sedentary

work as requiring periods of standing and walking *generally* totaling no more than *approximately* 2 hours of an 8-hour workday, and sitting *generally* totaling *approximately* 6 hours of an 8-hour workday.  See S.S.R. 83-10, 1983 WL 31251, at *5; S.S.R. 96-9p.  The Administration has made clear that an individual's need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically does not necessarily render that individual unable to perform any sedentary work.  See S.S.R. 96-9p.  To the contrary, the social security rulings recognize that a sit-stand option is an appropriate limitation in some cases provided that the RFC finding is specific as to the frequency of the claimant's need to alternate sitting and standing.  See id. Here, the ALJ's RFC finding is clear that Plaintiff would have the option to stand at his work station with intervals no more frequent than every thirty minutes.  (R. 38).

Applicable caselaw in this Circuit is also clear that a sit-stand option is not *per se* inconsistent with a restriction to sedentary work.  See Martin v. Barnhart, 240 F. App'x 941, 946 (3d Cir. 2007) (although sedentary work involves sitting *generally* approximately six hours of a workday, "[t]he regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight." (quoting Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004)).   Rather, when an individual is limited by a sit-stand option, the ALJ should consult a vocational expert to determine whether work exists in significant numbers in the national economy that an individual with such limitations could perform.  See, e.g., Milano v. Commissioner of Soc. Sec., 152 F. App'x 166, 169-70 (3d Cir. 2005); Staggers v. Barnhart, 106 F. App'x 104, 105 (3d Cir. 2004); Martin, 240 F. App'x at 945-46; Rainey v. Colvin, No. 2:15-cv-00594-TFM, 2015 WL 5782071, at *3-*5 (W.D. Pa. Oct. 1, 2015); Sylvester v. Commissioner of Soc. Sec., Civil Action No. 10-1012, 2011 WL 470257, at *15 (W.D. Pa. Feb. 4, 2011).  Whether such work exists will depend on the facts of each individual case.

Here, the ALJ elicited testimony from a vocational expert on the question of the sit-stand option. (R. 72-75). The VE testified that an individual with Plaintiff's limitations, including the sit-stand option, could perform sedentary jobs that exist in the national economy, including, but not limited to, telephone clerk, food and beverage order clerk, and charge account clerk. Id. The ALJ also concluded, based on the VE's testimony and other evidence, that Plaintiff could perform his past relevant work as an information technology specialist at a sedentary level within the parameters of his RFC finding. (R. 43-45). Based on the VE's testimony and other record evidence, the ALJ properly held that Plaintiff was not disabled based on the fact that work exists in the national economy that he could do, including his past relevant work as an IT specialist. Id.

To the extent Plaintiff further argues that remand is necessary because it is unclear whether the ALJ believed that Plaintiff could sit six hours out of an eight-hour workday, that argument is without merit. As set forth above, the definition of sedentary work implies an ability to sit for approximately six hours of the workday. Further, the case law cited above demonstrates that a sit/stand option similar to that included in Plaintiff's RFC is not *per se* inconsistent with an ability to perform sedentary work and is not inconsistent with Plaintiff's ability to perform a range of sedentary work based on the evidence in this case.[1] In addition, the ALJ gave great weight to the opinion of state agency review physician, Gail Sekas, M.D., who opined that Plaintiff could sit for a total of "[a]bout 6 hours in an 8-hour work day." (R. 42-43, 84). The ALJ specifically found that Plaintiff was "limited to a range of sedentary work, consistent with the

---

[1] To the extent Plaintiff suggests a conflict between the VE testimony and the DOT, case law within this Circuit has made clear that the fact that the job descriptions in the DOT are silent regarding the need for a sit/stand option does not place the DOT in conflict with jobs identified by a VE that include a sit/stand option. Rainey, 2015 WL 5782071, at *3 (citing Sanborn v. Comm'r of Soc. Sec., 613 F. App'x 171, 177 (3d Cir. 2015) and other cases). Moreover, the VE in this case specifically testified that she understood her obligation to identify any conflict between her testimony or other information and the DOT. (R. 70). She did not identify any such conflicts.

12

assessment" of Dr. Sekas. (R. 42).[2]  For all of these reasons, I find that the record is sufficiently clear as to Plaintiff's ability to sit, and remand is not warranted on this basis.

### III. **CONCLUSION**

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is granted, and Plaintiff's Motion for Summary Judgment is denied.  An appropriate Order follows.

---

[2] Plaintiff also makes cursory reference to an August 5, 2009 physical work performance evaluation performed by Christine Houck, DPT, which indicates, inter alia, that Plaintiff could sit "occasionally," or, 1/3 of the day. (R. 834-838, Ex. 25F).  This document does not change my findings.  The ALJ expressly discussed Houck's report in his opinion and explained that although he gave it "some weight," Houck did not indicate that Plaintiff's full medical record had been considered, and he was finding that Plaintiff was limited to a range of sedentary work consistent with Dr. Sekas's assessment. (R. 42).  Because the ALJ sufficiently addressed both the Houck and Sekas reports and his reasons for the weight assigned to each, I find no ambiguity or other error in this regard.

13

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBIN DALE REICH,

        Plaintiff,

  vs.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Civil Action No. 1:15-9

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 2nd day of December, 2015, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that it is ordered that Defendant's Motion for Summary Judgment (Docket No. 16) is GRANTED, and Plaintiff's Motion for Summary Judgment (Docket No. 10) is DENIED.

                                        BY THE COURT:

                                        /s/ Donetta W. Ambrose
                                        Donetta W. Ambrose
                                        U.S. Senior District Judge